```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JOSE CHAVEZ GOMEZ,

                            Petitioner,

    -vs-

MATTHEW WHITAKER, Acting Attorney
General, United States of America;
KRISTJEN NIELSEN, Secretary, United
States Department of Homeland
Security; JEFFREY SEARLS,
Field Office Director, Buffalo
Federal Detention Facility,

                            Respondents.

**No. 6:18-cv-06900-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding *pro se*, Jose Chavez Gomez ("Gomez" or "Petitioner") commenced this habeas proceeding on February 12, 2018, pursuant to 28 U.S.C. § 2241 ("§ 2241") against the respondents (hereinafter, "the Government")[1] challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). For the reasons discussed below, the request for a writ of habeas corpus is denied.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Attorney General William P. Barr is automatically substituted for Matthew Whitaker, former Acting Attorney General; and Kevin McAleenan is automatically substituted for Kristjen Nielsen, former Secretary, United States Department of Homeland Security.

## II. Factual Background

Gomez is a native and citizen of Mexico who, sometime in 1991, entered the United States, from Mexico to Arizona, without having been admitted or paroled after inspection by an Immigration Officer.

On April 2, 1995, Gomez was arrested for driving while intoxicated ("DWI").

On September 21, 1994, Gomez filed an Application for Asylum and for Withholding of Deportation (Form I-589) with the former Immigration and Naturalization Service ("INS"). INS terminated the application on August 16, 1995, after Gomez failed to appear for a scheduled interview.

On October 24, 1997, Gomez's father, a naturalized United States citizen, filed a Petition for Alien Relative (Form I-130) on Gomez's behalf with INS. INS approved the application on October 26, 1998.

On January 22, 1998, Gomez was served with a Notice to Appear ("NTA") which charged him with being subject to removal from the United Sates pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(i), as an alien present in the United States without being inspected or paroled.

On February 15, 1998, Gomez was arrested again for DWI.

On August 13, 1998, an immigration judge ("IJ") ordered Petitioner removed *in absentia* to Mexico after he failed to appear for a hearing in immigration court in Orlando, Florida.

By letter dated November 10, 1998, INS notified Gomez of the removal order and directed him to report on February 2, 1999, for departure from the United States to Mexico. Gomez, however, did not comply with the notice.

Thereafter, on October 27, 1999, Gomez was arrested for misdemeanor driving while under the influence ("DUI"), a violation of his probation terms.

On April 22, 2003, Gomez was convicted of battery in the Town of Astatula, Florida in the 5th Judicial Circuit Court of Florida. This conviction was based on an incident on March 10, 2003, in which Gomez's wife alleged that he struck her about the head and face and called her insulting names. Gomez was sentenced to 12 months' probation and 29 weeks' participation in the Batterer's Intervention Program.

On October 15, 2006, Goomez filed an Application for Action on an Approved Application or Petition (Form I-824). The application was denied on February 7, 2007.

On May 16, 2008, Gomez was arrested for driving with a suspended license but was released on bail.

On November 29, 2010, Gomez was arrested and charged with Sex Offense Against Child-Fondling. He entered a guilty plea on

September 13, 2011, in Ridgeway, New York Town Court to one count Harassment in the Second Degree (New York Penal Law ("P.L.") § 240.26). A $75-fine was imposed for this conviction.

On February 7, 2011, DHS officers encountered Gomez at the Medina, New York Village Court at which time he was taken into DHS custody pursuant to the outstanding removal order.

On February 11, 2011, Gomez's immigration attorney filed a motion to reopen ("MTR") his immigration case. On March 21, 2011, an IJ granted the MTR on the basis that Gomez had not been supplied sufficient notice in order to appear for his master calendar hearing. On March 14, 2011, Gomez's attorney requested that a bond be set pending the adjudication of the MTR. On March 22, 2011, DHS granted Gomez bond in the amount of $5,000. Bond was posed the following day, and Gomez was released from DHS custody.

Less than six months later, on September 11, 2011, Gomez was convicted of Harassment in the Second Degree in the Ridgeway Town Court, Orleans County, New York.

On September 19, 2013, Gomez's immigration attorney filed a motion to administratively close his immigration removal proceedings pending resolution of his state court criminal proceeding and filed an Application to Register Permanent Residence or Adjust Status (Form I-485). On September 9, 2015, an IJ administratively closed Gomez's immigration removal proceedings.

On August 31, 2015, Gomez was arrested by the New York State Police and charged with DWI and other vehicle and traffic infractions.

On February 18, 2016, he pleaded guilty in Barre, New York Town Court to Aggravated Driving While Intoxicated, in violation of New York State Vehicle and Traffic Law § 1192-2-AA. He was fined $500.

Less than six months after his guilty plea, Gomez was arrested again on June 10, 2016, by Genesee County Sheriff's Office and charged with Unlawful Imprisonment in the Second Degree, in violation of P.L. § 135.05.

A month later, on July 10, 2016, Gomez was arrested by the Genesee County Sheriff's Office and charged with Burglary in the Second Degree (illegal entry of a dwelling), in violation of P.L. § 140.25, Criminal Contempt in the First Degree (violating order of protection—physical contact), in violation of P.L. § 215.51, and Criminal Mischief in the Fourth Degree (intent to damage property), in violation of P.L. § 145. 00). These charges arose out of an incident on July 10, 2016, in which Gomez broke into a residence and attempting to speak with his wife, who had an order of protection against him.

On September 28, 2016, Gomez entered a guilty plea in Elba, New York, Town Court to Criminal Trespass in the Second Degree, in violation of N.Y. Penal Law § 140.15 and Criminal Mischief in the

Fourth Degree, in violation of N.Y. Penal Law § 145.00, in satisfaction of the arrest charges from June 10, 2016, and July 10, 2016. He was sentenced to 180 days' imprisonment.

On December 16, 2016, upon his release from the custody of the Genesee County Sheriff's Office, Gomez was taken into DHS custody in connection with his reopened immigration removal proceedings, now venued in Buffalo, New York. Also on that date, DHS issued a detention order and cancelled the previously posted bond.

On May 8, 2017, the IJ conducted a bond hearing in response to Gomez's request for a change in custody status. Clancy Decl. Ex. A pg. 6. At the conclusion of the hearing, the IJ determined that Gomez posed a danger to the community and denied bond. Although Gomez reserved his right to appeal to the Board of Immigration Appeals ("BIA"), no appeal was perfected.

On July 12, 2018, following multiple individual hearings at which numerous witnesses testified, the IJ denied Gomez's applications for relief from removal and ordered him removed from the United States to Mexico. Gomez, acting *pro se*, appealed the IJ's decision to the BIA. On December 14, 2018, the BIA dismissed the appeal.

On December 27, 2018, Gomez, acting *pro se*, filed a petition for review ("PFR") and a motion to stay in the United States Court of Appeals for the Second Circuit. *See Gomez v. Barr*, No. 18-3813 (2d Cir. Dec. 27, 2018). Because Gomez filed a motion for stay of

removal in his PFR, the forbearance agreement between DHS and the Second Circuit effectively prevents DHS from executing the removal order. *See In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

Gomez's PFR and stay motion remain pending before the Second Circuit. The briefing schedule is currently stayed pending that court's decision on Gomez's motion to proceed *in forma pauperis*. Docket No. 33, *Gomez v. Barr*, 18-3813 (2d Cir. Sept. 24, 2019).

Gomez filed the instant Section 2241 petition (Docket No. 1) on December 9, 2018. Respondents filed an answer and return (Docket No. 4), declarations and exhibits (Docket Nos. 4-1 & 4-2) in support, and a memorandum of law (Docket No. 5). Gomez filed a reply (Docket No. 6).

The Petition was transferred to the undersigned on July 30, 2019 (Docket No. 7).

**III. Scope of Review**

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to

provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . .

the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

    **A.    Overview of the Petition**

Gomez's Petition appears to assert two grounds for habeas relief. First, he contends his prolonged detention more than six months violates his right to substantive due process under the Fifth Amendment of the United States Constitution because it has become indefinite. *See* Petition ("Pet.") ¶¶ 31-34. Second, he contends that he has been subject to mandatory detention without any determination as to whether he is a flight risk or a danger to society, in violation of his procedural due process rights. *See id.*, ¶ 33. As relief, Gomez seeks "an order requiring respondents to grant a bond hearing/promptly release Petitioner upon the order of this Court because there is no likelihood that he will be removed to Mexico in the reasonably foreseeable future;" "[o]rder the Attorney General and his agents not to remove Petitioner from the jurisdiction of this Court for the duration of the consideration of this Petition;" and "[o]rder a Stay of Removal while Petitioner's case is pending before this Court[.]" Pet. at 7.

### B. Statutory Basis for Detention

The Court first considers the statutory basis for Gomez's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) (to determine whether detention of an alien is authorized, threshold question is where to "locate [him] . . . within the complex statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1226 and 1231").

"The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal." *Enoh v. Sessions*, 236 F. Supp.3d 787, 793 (W.D.N.Y. 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017). Title 8 U.S.C., § 1231(a)(1)(A) provides for a 90-day removal period, during which the Government "shall detain," *id.* § 1231(a)(2), an alien "ordered removed," *id.* § 1231(a)(1)(A). After that mandatory detention, an alien ordered removed "may be detained beyond the removal period. . . ." 8 U.S.C. § 1231(a)(6).

Typically, the 90-day removal period begins on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). But "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii).

The Government acknowledges that there it is an open question in this Circuit as to whether an alien, like Gomez, who has a filed a stay motion which has not been adjudicated by the Court of Appeals, but whose removal has been effectively stayed by operation of the forbearance agreement between that court and DHS, is detained under § 1231(a) or § 1226. *See* Respondents' Memorandum of Law ("Respts' Mem.") (Docket No. 5) at 14 (citing *Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018), *as amended* (May 22, 2018)). In *Hechavarria*, the alien had received a favorable adjudication on his motion to stay. He argued that he was not detained under § 1231 because the removal period had not commenced. The Second Circuit agreed, stating that

> Section 1231 does not govern the detention of immigrants whose removal has been *stayed* pending judicial review. To hold otherwise would ignore the clear language of the statute as well as its internal logic. When a court of appeals issues a stay pending judicial review of an underlying removal order, the removal is not inevitable. A contrary reading assumes that the courts of appeals function as mere ministerial rubber stamps for agencies.

*Id.* (emphasis supplied). Courts inside and outside this District are divided on whether aliens in Gomez's position—i.e., those for whom the forbearance policy is in effect but whose stay motion remains pending—are detained under § 1231. *Contrast Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (quoting *Hechavarria*, 891 F.3d at 55; citing *Argueta Anariba v. Shanahan*, 190 F. Supp.3d 344, 349 (S.D.N.Y. 2016); *with* .

The Court need not venture into the debate because, regardless of which section applies, Gomez has not established entitlement to habeas relief.

**C.   The Claim Under Section 1231 Is Premature**

Pursuant to 8 U.S.C. § 1231(a), DHS has a 90-day statutory period to remove noncitizens following a final order of removal. In addition, the Supreme Court recognized in *Zadvydas* that the government is afforded six months—deemed to be a presumptively reasonable time— to effect an alien's removal. Here, the 90-day period, measured from "[t]he date the order of removal [became] administratively final," 8 U.S.C. § 1231(a)(1)(B)(i), commenced on December 14, 2018. Ninety days from that date was March 18, 2019. Six months from that date was September 18, 2019. In *Zadvydas*, the Supreme Court observed that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. Here, however, the presumptively reasonable six-month period expired less than a month ago. At this point in time, Gomez cannot establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* His *Zadvydas* claim is therefore subject to dismissal without prejudice as premature.

## C. The Procedural Due Process Claim Lacks Merit

To the extent Gomez contends that he has never been afforded an individualized hearing to review his custody status, he is incorrect. A bond hearing was held on May 8, 2017, before an IJ, who determined that release from DHS custody was inappropriate because Gomez "poses a danger to [the] community." Docket No. 4-2, p. 6 of 55.

To the extent that Gomez asserts that the IJ improperly weighed the evidence and testimony at the bond hearing, Congress specifically provided immigration officials with the discretion to grant or withhold release on bond, and "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). District courts sitting in habeas review therefore have no jurisdiction to review the substance of an IJ's discretionary decision denying bond. *E.g.*, *Hassan v. Holder*, No. 11 CIV. 7157 LGS, 2014 WL 1492479, at *8-*9 (S.D.N.Y. Apr. 15, 2014) (citing, *inter alia*, *Hamilton v. Shanahan*, No. 09 CIV. 6869 (SAS), 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009) ("[T]his Court lacks jurisdiction over Hamilton's Petition to the extent it asks the Court to review the weight that the IJ or BIA assigned the evidence or any other discretionary determinations the IJ or BIA made,

including the determination that Hamilton must be detained pending a decision on whether he should be removed.") (footnotes omitted)).

**D.  The Court Lacks Jurisdiction to Grant a Stay**

Gomez requests that this Court issue an order staying his removal from the United States. This request appears to be unnecessary given that the forbearance agreement between the Second Circuit and DHS is currently in place. Moreover, as Respondents argue, this Court lacks jurisdiction to order a stay of removal.

Because district courts lack jurisdiction to review removal orders, they likewise lack jurisdiction to stay removal orders. *See, e.g., Al-Garidi v. Holder*, No. 09-CV-6160L, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal.") (collecting cases). Accordingly, Gomez's request for a stay is denied as beyond the scope of this Court's jurisdiction.

**E.  The Court Lacks Jurisdiction to Grant Injunctive Relief**

Gomez requests that the Court to order Respondents to refrain from transferring him out of the Western District of New York during the pendency of this proceeding and while he remains in Respondents' custody. Respondents counters with several arguments as to why the Court lacks jurisdiction over this request and why it lacks merit, including that any decisions regarding the place of

confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Petitioner to another facility rests with DHS. Respts' Mem. at 23 (citing, *inter alia*, 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted).

As Respondents point out, the "Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a Bivens class action suit") (citing *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)). In light of the above authority, the Court

confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Petitioner to another facility rests with DHS. Respts' Mem. at 23 (citing, *inter alia*, 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted).

As Respondents point out, the "Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a Bivens class action suit") (citing *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)). In light of the above authority, the Court

confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Petitioner to another facility rests with DHS. Respts' Mem. at 23 (citing, *inter alia*, 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted).

As Respondents point out, the "Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a Bivens class action suit") (citing *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)). In light of the above authority, the Court

concludes that Gomez's request for an injunctive relief must be denied as beyond this Court's jurisdiction. *E.g.*, *Lopez Canas v. Whitaker*, No. 6:19-CV-06031-MAT, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019).

**V. Conclusion**

For the foregoing reasons, the petition (Docket No. 1) is denied without prejudice to the extent Gomez claims that his detention under § 1231 violates substantive due process; it is denied with prejudice to the extent he claims that he did not receive an individualized custody determination in violation of procedural due process; it is denied with prejudice as to his request for a stay from this Court; and it is denied with prejudice as to his claim requesting the Court to grant injunctive relief which is beyond the Court's jurisdiction. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: October 8, 2019
Rochester, New York.